Good morning, Your Honors. May it please the Court, Douglas Gross for the Plaintiff Appellant Crisis Center. I'd like to reserve a couple minutes for rebuttal. I have a few points I'd like to make today. First, the Crisis Center was formed in 2007 in Indonesia because of a massive criminal Ponzi scheme inflicted upon thousands of Indonesians. Because they really didn't know what to do, they banded together and formed this organization pursuant to Indonesian law. Guided by Indonesian law, they obtained the equivalent of American powers of attorney to authorize the Crisis Center to investigate what happened to their stolen money and to bring suit on their behalf. This was not filed as a class action, was it? No, it was not. And even if the Indonesian powers of attorney would be deemed valid under United States law, there are still missing victims, aren't there? That's correct. We represent about 4,000 out of 10,000 victims. And my third question is, am I correct in the impression that a separate suit has been filed and is ongoing with respect to the 4,000, if that's the right number? Yes, we began a second suit because the dismissal is without prejudice. Our standing in the second suit has been upheld so that the practical issues really on appeal here are those members who did not provide an assignment, which is about 700, and also there's a statute of limitations issue because the second suit would not relate back to the first suit. So that raises potential issues. So those are the two major practical issues raised by this appeal. So as to those people, and if you look at the complaint, it says you were empowered to act on behalf of various investors, but some number of these which you just said, of course, you don't have the assignment as part of that complaint. And then you go on to say that the Crisis Center has been damaged, but, of course, Crisis Center didn't exist until after the events at hand. So the difficulty I'm having that you might be able to help me with is that there is a mismatch here in terms of standing, and I don't understand the Constitutional or prudential basis for standing. Well, Your Honor, I mean, with regard to assignments, it's clear after sprint that we do have standing, and that's been determined below. With regard to an after-the-fact entity, it still represents the interests of its members. There's nothing wrong with the members getting together to pursue the interest. We say that the shortfalls that have been identified were prudential, and, therefore, because there are only prudential shortfalls in standing based on associational standing and based on power of attorney standing, that we are then entitled to invoke the prudential exception, which the Supreme Court wrote about in the Kowalski case and the Second Circuit wrote about in Huff after sprint was decided. We acknowledge that powers of attorney generally don't provide standing on prudential grounds, but it's not an Article III complete barrier that can't be overcome. As to the after-the-fact concern, I don't see how that raises real standing issues when people who suddenly find themselves with their life savings stolen and say, we have to get together and do something about it, that they gather together and create an organization specifically for the purpose of trying to pursue the funds that were stolen from them. Well, but it's not the question of, you know, there's another vehicle for that. It's called class action. That's one. And you can't, I mean, you have to rise and fall on that ground that you've just articulated under associational standing. So it's not, we didn't, you know, these are long-standing rules of how cases move through the court. Can you, in this case, I understand, at least as I looked at the record, there wasn't a request to amend, is that correct? No, I do believe we did request to amend. There were either multiple requests going back and forth and we did have requests to amend in the record. Well, if you were to amend now, what would you amend to say? I would amend to say that to put in all the details of the powers of attorney that we have for the missing people as to the over 3,000 assignments we have that gives per se standing to the crisis center pursuant to the Sprint case. That would take care of one group of people, correct? Yes. And what about the other group? Well, the other group would be the 700 missing, would be pursuant to the power of attorney, so there would be, you're right, there would be two separate bases of standing because the over 3,000 of the members have already given up their property interests and sawing lock, stock, and barrel their claims to the crisis center. But did you make a motion to amend your complaint and relate back on the basis of the assignments that you had procured? Well, we specifically requested 17A3 relief. That's real party and interest. Yeah. But that allows ratification after the fact. We said we wanted ratification and we did brief 17A3 below and said that we presented the fact of the assignments to the court and we did ask for that relief. I mean, we asked to re-plead. It was the record at 707 and the record 63 to 64. I mean, there were multiple motions and we put it in various of our oppositions to the many motions to dismiss that were made. We asked for a right to re-plead and we further asked for the right of ratification of those members who provided assignments because we fall squarely within the 17A3 right for the real party and interest to be substituted, which specifically allows after filing for the real party and interest to ratify the action and come in. And since there's only a prudential shortfall of standing, we don't see why the district court denied that relief. We feel that the two reasons given by the district court were both. Why do you say prudential shortfall standing, which is a phrase that has several contents to it? I thought that the district court found that you hadn't shown that the center crisis had been a victim, had no particularized injury under Lujan. Can you point to any injury that the center had? I think you have to look at the center's injury by what its members' injury were. Well, that's associational standing, but my understanding is that the Supreme Court has told us that absent some statutory basis by Congress, such as in the labor union area, where labor unions are statutorily allowed to represent the rights of their members, we are not to invent associational standing. Am I wrong? Your Honor, I'd like to just correct it a little bit in saying that the court has said that that raises prudential issues, and therefore it's not Article III, but that third prong of the Hunt test is a prudential bar, which is not 100%. I would like to quote United Food, because what we're talking about here is who is the right party in interest to bring a clear case for controversy. And United Food, the court said, the general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limit on the exercise of federal jurisdiction, not a constitutional mandate. And we think that's important, and that's really the nub of what this appeal is all about, because that goes to two issues. It goes, did we have the right to invoke the prudential exception below, which the court basically held. We did not even have the right to make that argument. And two, did we have a right to 1783 ratification, which the court denied because it said we didn't have standing when the case was filed. Well, you agree with the principle, although I don't think you agree with the application, that under Rule 17 you do need standing at the outset in order to then have the substitution. You can't have the substitution after the fact and bootstrap standing, correct? Well, I'd again like to modify that a little. You would have to have Article III standing at the outset. But obviously if you don't have the real party in interest, there's going to be some standing problem at the outset that you have to correct. So there has to be some standing problem at the outset for 1783 ratification even to come into play. There has to be something wrong. Well, let's imagine hypothetically that there's a synagogue in West Palm Beach, Florida, some of whose members were defrauded by Bernard Madoff. And the rabbi of the synagogue brings a suit and says, many of our members were harmed by Mr. Madoff's actions, and I want to bring a suit on their behalf. And the judge said, well, the individuals can. And then the person says, well, okay, give me a chance to amend it. I'll go back and I'll give you the names of the people. Would that be okay under 17? That's a much harder case than we have. How is it different from this? Because the organization is comprised of the individuals themselves. It's not a separate rabbi who was not harmed at all. We have an organization comprised of members who were harmed, and that's the difference between your hypothetical and what we have here. But, you know, it's a shell organization to try to sweep up all these individuals. And so it doesn't somehow magically take on some kind of constitutional proportion in terms of a plaintiff simply because you say, we created the organization in order to sweep up all these people. And that's where I'm having some trouble. Like if you take the environmental organizations, for example, which often obtain associational standing because what they do and what interests they're protecting relate to the organization. Here the organization, there is no, quote, organization with a damage, correct? There's individual people. Well, the organization doesn't have a damage separate from its members. Obviously the organization was formed by all the damaged investors after the fact because they realized not one of them could pursue this on their own, that they would have to get together. And so does the organization have its own separate injury? So in other words, let me just ask you then if you have a situation where someone says, you know, there's been a lot of discrimination going on at Kmart, a nationwide company, thousands of employees. And so instead of a class action, all we'll do is we'll form an organization and we'll call it Kmart. And it actually will represent all these individuals who work at Kmart that have been discriminated against, and therefore Kmart sues Kmart. Does Kmart have standing just by saying it's going to represent everybody and everybody says, yep, take my claim and have at it? Under the sprint with the claims aggregator, I'd say yes, certainly with an assignment. If there's an assignment? Absolutely. Let's say there's not an assignment. Or we have two groups of people, some with and some without. Not an assignment, then you have to look at the prudential exception. Is there a close relationship? Yes. Is there a hindrance to their bringing suit? Probably not because they're all in America. They all have access to attorneys who will handle these kind of claims on a contingent basis, and therefore there's not the same hindrance that exists for all these Indonesian investors who lost as little as $5,000 and had really no practical other way to deal with this situation. Whatever happened to the class action? We have a whole body of jurisprudence to deal with precisely this situation, particularly in the investor context, don't we? That is correct, Your Honor, and that argument was made in sprint, and the Supreme Court said that's one of several options that plaintiffs had. The Indonesians here formed this organization in 2007 before even coming to this country in 2009, so this was the course of conduct that they chose well before they consulted any American counsel. Okay. We've taken your time. We'll hear from the other side. Good morning. My name is Julie Farris. I represent Regal Financial Bank, its holding company, and four of its current members of its board of directors, but I'm presenting argument today on behalf of all the defendants. The problem here is not just that the Perkampulan failed to adequately plead standing, which it acknowledges in its reply brief, but that it actually did not have constitutional standing at the time it filed its complaint. The Perkampulan did not have an injury in fact in its own right as of the date it filed that complaint, nor at any time before assignments were executed. The existence of an injury in fact is a constitutional requirement for standing. Why shouldn't they be permitted to go back and amend? Your Honor, just to clear one of the questions that came up earlier, there was no motion filed to amend other than to the extent those arguments were made in opposition briefs. But in addition... So that was all done in the context of Rule 17? That's correct. In addition, the point at which the Perkampulan had the right to call itself a plaintiff was the point at which title to the claims was transferred to it by a valid assignment. It couldn't amend this existing complaint because there was no standing basis for that complaint. It received the relief to which it was entitled, which was the opportunity to file a valid complaint that identified a plaintiff who had standing. This wasn't a situation in which the Perkampulan filed as attorney in fact and identified a number of victims. It did not file this as part of a class action. It did not identify in the complaint any of the individuals who actually had standing and there was no one named as a plaintiff in the complaint it's filed who had standing. The only available, in the absence of assignments, the only available way for an association to bring a lawsuit in the absence of an injury in fact is through the associational doctrine, but that is a very narrow door, and it requires while Congress may override the prudential element of that test, the district court and the litigants can't ignore it, and even in United Food this is made clear. In the absence of any constitutional act that would suggest that the Perkampulan could override the third prong of that test, the district court had to apply it, and it applied it appropriately. In this situation, the Perkampulan was created exclusively for the purpose of bringing a lawsuit. The only reason it even met the second prong and can argue that its purpose was germane to the interest it was protecting was because it was created for the purpose of the precise lawsuit that it brought. So far as I'm aware, there has never been a case in which such an association was permitted to proceed. And second, this was a situation in which the Perkampulan is seeking exclusively monetary damages. There is no injunctive relief requested. In fact, that would be pointless because there is no Ponzi scheme going on. So in that situation, no circuit court or Supreme Court case has ever held that a case that seeks exclusively damage monetary relief can proceed unless there is some congressional act that suggests that the association should be permitted to do so. And that simply does not exist here. With respect to the Hough exception that the Perkampulan claims, I believe it's confusing two separate types of standing, third-party standing and associational standing. The Kowalski case makes clear, as does the Supreme Court in Powers v. Ohio and other cases, that in the context of third-party standing, an individual may bring rights for some other party, but it is first required to show that it meets each of the constitutional requirements, including an injury in fact. If that organization or individual has an injury in their own rights, then under Kowalski we proceed to the two exceptions. And I believe the Hough case skips that delineation between third-party standing and associational standing. It's difficult to read it. But that doesn't mean that the district court was required to follow a Second Circuit opinion when Ninth Circuit and Supreme Court precedent shows otherwise. In addition, even in the Hough case, the exceptions were not applied where the party was a broker who had purchased the securities in question on behalf of the clients it sought to represent. The court there said that is not a close enough relationship. Even as it acknowledged that the plaintiff there had requested such an exception, it rejected it. It also said that that plaintiff did not meet the second prong of that exception, which was that its members were not hindered from bringing their claims. And I disagree with Mr. Gross' analysis that his clients, or the underlying victims, I should say, are hindered in the way that this second exception intends. These people were able, through this board, some of whom had injuries in their own right, to organize an association, to finance litigation, to find U.S. counsel, to bring a case in the United States. If they could have done that, they certainly could have filed lawsuits individually or as representatives. And even the other 4,200 purported members were all sophisticated enough, according to the Perkin-Pulin, to sign a power of attorney in a complex legal document, and 3,500 of them were sophisticated enough to purportedly sign an assignment that was written in English. If they were capable of doing that, there was nothing to prevent them from organizing the Perkin-Pulin as some sort of underlying organization and filing their lawsuit either as individuals, collectively, or by representation. So that is not the type of hindrance that the law recognizes. Those hindrances are incapacitated individuals, mentally deficient individuals, individuals who are precluded because of the type of claim that is being brought, from identifying themselves because they're afraid of censure or some other negative connotation from being identified in the lawsuits. It also applies to people who, as were said in Raven-DeVende and some of the other cases cited, where the quote-unquote beneficiary is precluded by law from bringing their own claim, and a trustee or legal representative is required. But finally, in those cases, the complaint that was filed includes detailed information not just about the person who believes they are the plaintiff, but also about all of the individuals and their underlying claims. We received none of that in this complaint. The application of Rule 17 is discretionary with the district court, and beyond that, the question of whether to relate back is even more discretionary. The court made its own determination based on the facts and based on the lack of facts in this complaint that it would not be appropriate. The Perkin Pullen was not attempting to act as a representative or an attorney-in-fact for individuals that it had identified. It brought this case as the one and only plaintiff. It did not have constitutional standing to do so. It did not meet the associational standing test, and it did not have an injury-in-fact. It had no basis to bring that complaint. The complaint had no legal effect. The court had no jurisdiction. So the court handled the case as it should have. Thank you. You've used all your time, but I'm going to give you a minute for rebuttal. I'd just like to return to the Rule 17 argument. The opinion below specifically held that there was no associational standing on prudential grounds, not constitutional grounds. Therefore, the district court's holding that that lack of standing did not allow 1783 ratification was just purely an error of law. The second reason that the district court gave for refusing to allow that ratification was that we only got about 3,000 out of 4,000, and that 70% was not high enough. We submit that punishing those members who provided assignments because a minority did not provide assignments was an abuse of discretion and should not be sustained by this court. Rule 1783 should be liberally interpreted, and those members who provided the assignment in a case in which there was article 3 standing should be allowed to ratify that suit. Thank you. Percompulon v. Wong is submitted. Thank you both for your arguments this morning.
judges: Hawkins, McKeown, Bea